Essex County Circuit Court.

BELMONT HOTEL, INC., v. THE NEW JERSEY TITLE
GUARANTY AND TRUST CO.

Decided March 21, 1944.

For the plaintiff, *Kristeller & Zucker*.

For the defendant, *John Nugent*.

THE COURT: This suit is one brought by Belmont Hotel, Inc., the plaintiff, tenant, against The New Jersey Title Guaranty and Trust Company, the defendant landlord.

It appears, under the terms of the written lease between these parties, which is in evidence, made on or about September 26th, 1941, that under paragraphs 2, 3 and 4 of the said lease the obligations of the tenant are specifically set forth as to what the tenant has to do relative to certain repairs. There is no provision contained therein relating to alterations.

It is very clear from the reading of the lease—at least it seems so to me—that paragraph 3 says in effect that "For the correction, prevention and abatement of nuisances, violations or other grievances in or upon or connected with said premises during said term, the tenant shall at its own cost and expense properly comply with and execute all rules, orders and regulations, orders, statutes, ordinances and requirements of the Federal, State and Municipal government and of any and all their departments, commissions, boards, and bureaus applicable to said premises." It is clear that relates only to the correction and abatement of a nuisance, violation or grievance.

Certainly the conversion from oil burning to coal burning has no relation or connection whatever to a nuisance, violation or grievance.

The federal government directed this change to be made on account of war conditions and in order to conserve fuel oil for our armed forces. Naturally, this was not within the contemplation of the parties at the time the lease was executed. However, at the time the lease was executed it was agreed between the landlord and the tenant that the premises, for which the landlord obligated itself to pay the rent, was to be used for a specific purpose and the specific purpose was the purpose of conducting a hotel business under the name of Hotel Belmont, Inc.

Naturally, the hotel business could not be conducted unless there was heat furnished as that is required for both health and sanitary reasons. Certainly the landlord had an obligation and agreed when it rented these premises for the purpose of being used as a hotel, that it could be so used and that the conversion herein required, under the direction of the President in his capacity as Commander-in-Chief of our armed forces, necessarily had to be followed out and obeyed. This, of course, could only be done, as I see it from the agreements of these parties, by the landlord arranging for such conversion so that the property could be used as hotel property in order that the landlord might benefit thereby, not only from receiving the rental from the tenant but the landlord also received the full benefit at the expiration of the lease of owning the so-called fixtures and necessary equipment when

the property reverted to the possession of the landlord. It is quite true that in *Holden* v. *O'Brien,* 209 *App. Div.* 266; 204 *N. Y. S.* 340; *affirmed (Court of Appeals),* 240 *N. Y.* 560; 148 *N. E. Rep.* 705, that the court held the same as I have found here, the obligations and the duties of the parties as relates to their agreement for alterations to the property in question.

I cannot see that the suggested authority upon which the defendant relies, *i. e., Central Railroad* v. *DeCozen,* 118 *Atl. Rep.* 625, is in any way applicable to the situation we have had presented to us in the instant case. In this case there was a limitation on the duty of the landlord as to what it was called upon to do and that related only, as I have already indicated.

Therefore, the motion on behalf of the defendant for a direction of a verdict, the court will deny. I, therefore, will find a verdict in favor of the plaintiff as against the defendant.

The next question for consideration is, what amount of damages has the plaintiff established.

Naturally, the burden of proof is upon the plaintiff to establish its case by a fair preponderance of the evidence, that is the greater weight of the evidence. That also includes the question of the amount of damages that it has sustained. The proofs are uncontradicted, as the defendant has not, in fact, offered any testimony as to what the cost of the installation of the apparatus for coal firing amounted to. Further, the testimony would indicate that the plaintiff did install a stoker system. The contract for same is in evidence and is in the amount of $1,895.

A reliable concern has previously made an inspection of these premises and made certain recommendations of what was necessary and a stoker system was agreed upon, but, in my opinion such concern, as I have said, was well qualified and able to install, recommend and advise what firing system would be necessary and proper to accomplish results when needed for the proper heating arrangement in the conduct of this hostelry.

The plaintiff, however, added thereto the services of an engineer. I am not satisfied, nor am I convinced, that the

plaintiff has established the proof necessary that the services of that engineer were such that his fee should be allowed as an element of damage. The work could well have been done without the services of the engineer. The other claims are waived, such as the claim for ash cans and a claim for hoisting apparatus for the ashes.

Therefore, I find the amount of damages is $1,895. And I will direct a verdict in favor of the plaintiff and against the defendant in the sum of $1,895, without interest.